UNITED STATES DISTRICT COURT
DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA f/b/o )<br>DOTEN'S CONSTRUCTION, INC.,           )<br>                                                          )<br>           *Plaintiff*                                 )<br>                                                          )<br>v.                                                       )<br>                                                          )<br>JMG EXCAVATING &                          )<br>CONSTRUCTION CO., INC., et al.,      )<br>                                                          )<br>           *Defendants*                              )<br>_____)<br>                                                          )<br>GREENWICH INSURANCE COMPANY, )<br>                                                          )<br>           *Third-Party Plaintiff*                )<br>                                                          )<br>v.                                                       )<br>                                                          )<br>JMG EXCAVATING &                          )<br>CONSTRUCTION CO., INC., et al.,      )<br>                                                          )<br>           *Third-Party Defendants*           )    | Docket No. 03-134-P-S |

*MEMORANDUM DECISION ON MOTION IN LIMINE FILED BY GREENWICH
INSURANCE COMPANY AND RECOMMENDED DECISION ON DAMAGES TO BE
AWARDED TO GREENWICH INSURANCE COMPANY AGAINST THIRD-PARTY
DEFENDANTS*

Greenwich Insurance Company, the third-party plaintiff in this action, seeks damages against the third-party defendants, JMG Excavating & Construction Co., Inc., Crown Performance Corporation, Judith M. Gro and Brian D. Gro, having obtained summary judgment in its favor on its claims against them and on any counterclaims raised against it by them. It also moves *in limine* to preclude any challenge by the third-party defendants to its entitlement to at least $25,013.75.

1

Greenwich Insurance Company Motion *In Limine* Regarding Damages Established on Summary Judgment ("Motion") (Docket No. 262). I deny the motion *in limine* and recommend that the court award an amount of damages somewhat less than that requested by Greenwich.

### I. The Motion in Limine

This case has a long and convoluted history, all of which fortunately need not be recounted here. The essential procedural history follows. In August 2003 Greenwich filed a third-party complaint against the third-party defendants in which it sought to recover any damages that might be awarded against it in the principal action under a subcontract payment bond. Third Party Complaint of Greenwich Insurance Company (Docket No. 21). The third-party defendants executed an indemnity agreement with respect to that bond. Greenwich moved for summary judgment on its third-party complaint and on counterclaims asserted against it by the third-party defendants. Greenwich Insurance Company's Motion for Partial Summary Judgment, etc. (Docket No. 58). I recommended that the motion be granted . Recommended Decision on Third-Party Plaintiff's Motion for Partial Summary Judgment (Docket No. 63). The court adopted the recommended decision. Docket No. 86. A settlement conference was held on June 2, 2005, at which settlement was achieved as to all claims except for determination of the amount of damages due Greenwich on its third-party claim. *See* Report of Settlement Conference and Order (Docket No. 233). A motion to enforce settlement was filed by JMG on June 13, 2005 (Docket No. 235). Greenwich opposed the motion, including in its opposition a request for an attachment or order for the deposit of security, based on the summary judgment decision. Docket No. 238. I denied the motion for attachment and recommended that the motion to enforce the settlement be granted. Memorandum Decision on Motion for Attachment on Trustee Process and Recommended Decision on Motions to Enforce Settlement Agreement and for Entry of Judgment ("Recommended Attachment Decision") (Docket No. 251). I also recommended that

Greenwich's motion for entry of judgment on its third-party complaint in the amount of $90,824.51 be deemed a submission indicating that the parties to the third-party compliant were unable to agree on the amount of damages and were seeking resolution by the court. *Id*. at 8. The court adopted these recommended decisions as well. Docket No. 258.

My Recommended Attachment Decision included the following:

> Counsel for Greenwich, who participated [in the settlement conference] by telephone, took the position that the summary judgment awarded Greenwich against JMG Excavating was for a sum certain. In my report and order I noted the following:
>
>> A review of the summary judgment decision makes clear that though no sum-certain award was made, the amount due Greenwich by JMG Excavating may be easily determinable. In any event, Greenwich and JMG Excavating have agreed that to the extent it is necessary for a sum-certain determination to be made, the parties will present that issue to the court, without a jury, for determination of any necessary facts and conclusions of law. The parties shall advise the court on or before July 5, 2003 whether or not any such issue remains for determination and, if so, file memoranda detailing their respective positions on the issue.
>
> * * *
>
> As I have already noted, the summary judgment that Greenwich obtained against JMG was not for a sum certain . . . . It is the amount of money to which Greenwich is entitled that is still very much at issue.
>
> My two orders . . . are quite clear.  As noted in the June 3 order, Greenwich agreed, through counsel, to submit to this court the issue of the amount due from JMG on the summary judgment "to the extent it is necessary" and to advise the court no later than July 5, 2005 if that course of action would be necessary. From all that appears, Greenwich has made no attempt, following the settlement conference, to come to an agreement with JMG on that amount.

Recommended Attachment Decision at 3, 5 (citations omitted).

In the pending motion, filed on the day of the damages hearing, Greenwich takes the position that this court's ruling on its motion for partial summary judgment established that it is entitled to, at a minimum, $25,013.75 in damages on that judgment. Motion at [1]. This is so, it asserts, because

3

"[p]ursuant to the Recommended Decision, the Court found the following undisputed material fact: 'As of May 24, 2004 Greenwich had sustained losses in the form of attorney fees and expenses in the amount of $25,013.75 in investigating and defending claims made on the bond, including defending the claim by Doten in this action.'" *Id*. at [2]. JMG responds, correctly, JMG Excavating and Construction Co., Inc.'s Response in Opposition to Greenwich Insurance Company's Motion in Limine, etc. (Docket No. 269) at 2, that a recitation of an undisputed material fact, admitted by both parties, in a recommended decision on a motion for summary judgment is nothing more than that: a fact on which the parties agree. It does not thereby somehow become a finding of fact by the court that will serve as law of the case for all ensuing purposes. My recommended decision, and the court's adoption of that decision, cannot reasonably be read to award any specific amount of damages to Greenwich on its third-party claims. An award of summary judgment is procedurally distinct from an entry of an award of damages. Even if that were not the case, it is not the practice of this court to award damages without making that award explicit on the docket, or to make a damages award in bits and pieces rather than as a single act.

The motion *in limine* is denied.

## II. Damages

An evidentiary hearing was held before me on September 27, 2005 on the issue of damages to be awarded to Greenwich in connection with the judgment in its favor on its third-party complaint. Greenwich presented one witness and five exhibits, which were admitted without objection. JMG presented one witness and one exhibit, which was admitted without objection. The parties submitted post-hearing memoranda and recommended findings of fact and conclusions of law. Docket Nos. 267-68 & 270. I recommend that the court make the following findings of fact and conclusions of law.

4

### A. Proposed Findings of Fact

1. The action which gave rise to this third-party action was initiated by Doten's Construction, Inc., which asserted claims arising from non-payment for its work as a second-tier subcontractor in connection with a project to repair and/or reconstruct a Navy hangar at Brunswick Naval Air Station. Complaint (Docket No. 1) at 1-5; First Amended Complaint (Docket No. 15) at 1-7; Second Amended Complaint (Docket No, 34) at 1-6. Doten was a subcontractor to JMG. Complaint ¶ 6; First Amended Complaint ¶ 6; Second Amended Complaint ¶ 6. The amount of Doten's claim was $86,354. Recommended Decision on Motions and Cross-Motions for Summary Judgment (Docket No. 136) at 6.

2. Doten named Greenwich as a defendant in its capacity as surety for JMG. First Amended Complaint ¶ 14; Second Amended Complaint ¶ 14. Greenwich had furnished a payment bond for JMG relating to this project in the amount of $856,099. Subcontract Payment Bond (Exhibit J to Affidavit of Eric H. Loeffler in Support of Greenwich Insurance Company's Motion for Summary Judgment Against the Plaintiff (Docket No. 75)) at 1. JMG paid $11,061 for the bond. Hearing Testimony of Brian Gro.

3. On or about September 25, 2001 JMG, Crown Performance Corporation, Judith M. Gro and Brian D. Gro executed a general indemnity agreement, Greenwich Insurance Company General Indemnity Agreement ("Agreement") (Exh. A to Affidavit of David G. Bryton in Support of Greenwich Insurance Company's Motion for Partial Summary Judgment, etc. (Docket No. 60)) promising to indemnify Greenwich with respect to payments made under the bond.

4. Greenwich filed a third-party complaint against JMG, Crown Performance Corporation and the Gros seeking indemnification, specific performance and equitable reimbursement for any damages for which it might be held liable on Doten's claims. Third Party Complaint of Greenwich Insurance Company (Docket No. 21). JMG asserted cross-claims against Greenwich for contribution and

indemnity.  Amended Answer and Amended Cross-Claims of Defendant JMG Excavating and Construction Co., etc. (Docket No. 24) at 7-8.

5. In addition to the defenses asserted by JMG to Doten's claims, Greenwich asserted that its obligations under the bond were discharged as a matter of law due to a material alteration of the subcontract — specifically, the change from the so-called Oest design for the project to the so-called Becker design.  Hearing Testimony of Eric H. Loeffler, Esq. ("Loeffler Testimony").

6. On April 23, 2003 Greenwich notified the indemnitors that it expected to be reimbursed for all funds it expended in the investigation, evaluation, negotiation and defense of claims made on the bond.  Greenwich Hearing Exhibit G.  This action was commenced on June 3, 2003.  Docket. Prior to that commencement, attorneys for Greenwich engaged an accounting firm in Philadelphia, Nihill & Riedley, P.C., to review Dunn & Bradstreet information relating to JMG.  Loeffler Testimony.  The total bill for this service was $683.68.  Greenwich Hearing Exhibit D.

7. Attorneys for Greenwich spent two hours on a motion for admission to this court *pro hac vice* at the beginning of this case, billing $325 in fees for that activity.  Cetrulo & Capone LLP invoice dated September 8, 2003 (all cited invoices are included in Greenwich Hearing Exhibit A unless otherwise noted), entries for 8/4/03, 8/19/03, 8/21/03, 8/28/03.

8. On June 7, 2004 Greenwich filed a motion for partial summary judgment on its third-party claims and on JMG's cross-claims.  Docket No. 58.  I recommended that the motion be granted. Docket No. 63.  On August 4, 2004 the court accepted the recommended decision. Docket No. 86. Fees in excess of $3,580 were billed in connection with this motion.  Cetrulo and Capone LLP invoices dated June 8, 2004, with entries for 5/20/04, 5/21/04, 5/26/04, 5/27/04, 5/28/04; dated July 15, 2004 with entries for 6/1/04, 6/28/04, 6/29/04; dated August 12, 2004 with an entry for July 16, 2004; and dated September 13, 2004 with an entry for 8/4/04.  Before bringing the motion, counsel for

6

Greenwich asked counsel for JMG to dismiss the cross-claims but JMG refused to do so. Loeffler Testimony.

9. Eric Loeffler, Esq., the primary attorney for Greenwich in this action, attended the depositions of twelve individuals but did not ask any questions during eight of those depositions. *Id*. He only asked a few questions at the other depositions. *Id*. Greenwich seeks attorney fees of $13,520 and travel costs of $1,122.58 in connection with these depositions. Cetrulo and Capone LLP invoices dated June 8, 2004 with entries for 5/11/04, 5/12/04, 5/13/04; dated July 15, 2004 with entries for 6/9/04, 6/10/04, 6/11/04, 6//14/04, 6/15/04.

10. On July 26, 2004 Greenwich filed a motion for summary judgment with respect to Doten's claims against it (Docket No. 72), which was granted with regard to Doten's claims under the Maine "prompt pay" statute and under Maine law concerning bad faith of an insurer (Docket Nos. 136 & 145). The court denied the motion with respect to Greenwich's argument based on an alleged material alteration of the project that would discharge Greenwich from its obligations under the bond. *Id*. Greenwich's attorneys billed a total of $15,460 in fees in connection with this motion. Cetrulo and Capone LLP invoices dated July 15, 2004 with an entry for 6/29/04; dated August 12, 2004 with entries for 7/1/04, 7/2/04, 7/6/04, 7/7/04, 7/9/04, 7/12/04, 7/13/04, 7/14/04, 7/15/04, 7/21/04, 7/22/04, 7/26/04; dated September 13, 2004 with entries for 8/10/04, 8/24/04, 8/26/04, 8/27/04; dated November 5, 2004 with an entry for 10//7/04; dated December 3, 2004 with entries for 11/7/04, 11//18/04, 11/27/04; and dated February 4, 2005 with entries for 12/2/04, 12/3/04, 12/16/04, 12/23/04, 1/5/05, 1/10/05.

11. In February 2005 Fireman's Fund, insurer of another of the defendants in the original action, settled with Doten by paying Doten $93,754, the full amount of its claim plus interest. Settlement Agreement and Mutual Release (included in Greenwich Hearing Exhibit E). After this

settlement, Greenwich's attorneys billed $340 in fees relating to a conflict of interest with respect to Fireman's Fund. Cetrulo and Capone LLP invoice dated April 15, 2005, with entries for 3/3/05, 3/4/05, 3//7/05.

12. Greenwich's bills include attorney fees in the amount of $1,700 and costs of $172.24 in connection with Loeffler's appearance at the final pre-trial conference in this case. Cetrulo and Capone LLP invoice dated April 15, 2005, with entries for 3/8/05. On May 6, 2005 Loeffler tendered to Doten a check in the amount of $1,000 "to cover Doten's remaining claims against Greenwich." Letter dated May 6, 2005 from Eric H. Loeffler to Neal Pratt (included in Greenwich Hearing Exhibit E). Greenwich subsequently paid Doten an additional $5,000 in exchange for dismissal of its remaining claims against Greenwich, so that Greenwich would not have to attend any trial of any remaining claims in the original action. E-mail dated May 24, 2005 from Eric H. Loeffler to Carrie Hoffmann (included in Greenwich Hearing Exhibit E); Loeffler Testimony.

13. In May or June 2005 Greenwich paid Doten a total of $6,000 to reduce any further exposure from the claims asserted by Doten, which took the position that, although it had been paid by Fireman's Fund on its Miller Act bond claim, it was still entitled to force Greenwich to participate in the trial of the action and to seek to recover alleged unpaid interest and nominal damages against Greenwich. Affidavit of Eric H. Loeffler (Greenwich Hearing Exhibit F) ¶ 20. Doten could also have taken an appeal of the summary judgment entered against it and in favor of Greenwich on its Prompt Payment Act claim. *Id*.

14. I conducted a settlement conference on June 3, 2005 as a result of which the only issue left unresolved was the amount of indemnity damages due to Greenwich from JMG and the other indemnitors. Report of Settlement Conference and Order (Docket No. 233).

15. On June 6, 2005 Greenwich told Fireman's Fund and J.A. Jones not to pay any of the settlement proceeds to JMG. Report of Conference of Counsel and Order (Docket No. 234) at 2. After a telephone conference on June 8, 2005, I entered an order stating that Greenwich's demand had no effect on the commitments made by the parties at the settlement conference. *Id*. at 2-3. Thereafter, Greenwich again directed Fireman's Fund and Jones not to pay any part of the settlement proceeds to JMG and demanded that Fireman's Fund and Jones pay Greenwich an increased amount of the settlement proceeds due JMG. Letter dated June 9, 2005 from Eric H. Loeffler to Paul E. Chronis (Exhibit C to Docket No. 235).

16. As a result, JMG filed a motion to enforce the settlement agreement. Docket No. 235. In response, Greenwich filed an opposition and a motion for attachment on trustee process or for collateral security and for entry of judgment in its favor. Docket Nos. 238-39 & 246. JMG's motion was granted and Greenwich's requests were denied. Docket Nos. 250-51 & 258. Greenwich's attorneys spent 33.5 hours relating to its attempt to obtain a portion of the settlement payment due to JMG from Fireman's Fund and Jones, for a total bill of $6,942. Cetrulo and Capone LLP invoice dated July 7, 2005 with entries for 6/6/05, 6/7/05, 6/9/05, 6/13/05, 6/21/05, 6/22/05, 6/23/05, 6/24/05; Hinshaw and Culbertson LLP invoices (included in Greenwich Hearing Exhibit B) dated August 17, 2005 with entries for 7/5/05, 7/25/05, 7/29/05 and dated September 15, 2005 with entries for 8/1/05, 8/2/05, 8/3/05, 8/4/05, 8/22/05, 8/24/05; and Norman, Hanson & DeTroy LLC invoice dated September 9, 2005 (Greenwich Hearing Exhibit C) with entries for 8/3/05, 8/4/05.

17. Greenwich now seeks a total of $95,623.96 plus the fees and expenses which it has incurred in connection with the damages hearing and the post-hearing briefing. Greenwich Insurance Company's Proposed Findings of Fact and Conclusions of Law (Docket No. 270) ¶ 43 & n.1.

18. The Agreement provides, in relevant part, that the indemnitors

shall exonerate, indemnify, and keep indemnified [Greenwich] from and against any and all liability for losses and/or expenses of whatsoever kind or nature (including, but not limited to, interest, court costs, and the cost of services rendered by counsel, investigators, accountants, engineers or other consultants, whether consisting of in-house personnel or third-party service providers) and from and against any and all such losses and/or expenses which [Greenwich] may sustain and incur: (1) By reason of having executed or procured the execution of any Bond; (2) By reason of the failure of the [Indemnitors] to perform or comply with the covenants and conditions of this Agreement; or (3) In enforcing any of the covenants and conditions of this Agreement.

Greenwich Insurance Company General Indemnity Agreement ("Agreement") (Exhibit A to Docket No. 60) ¶ 2.

19. The Agreement also provides, in relevant part:

In the event of any payment by [Greenwich], the [Indemnitors] further agree that in any accounting between [Greenwich] and the [Indemnitors], [Greenwich] shall be entitled to charge for any and all disbursements made by it in good faith in and about the matters contemplated by this Agreement under the belief that it is or was liable for the sums and amounts so disbursed, or that it was necessary or expedient to make such disbursements, whether or not such liability, necessity or expediency existed; and that the vouchers or other evidence of any such payment by [Greenwich] shall be prima facie evidence of the fact and amount of the liability of the [Indemnitors] to [Greenwich].

In determining whether or not [Greenwich] is entitled to charge the [Indemnitors] for disbursements made by it in good faith, the parties agree that:

A. [Greenwich] shall have the right, in its sole discretion, to prosecute, defend, appeal, settle, compromise or pay any claim, suit or judgment involving any Bond or to take any other action it may deem necessary, expedient or appropriate to protect its interests;

B. [Greenwich] shall have the right to incur such expenses in handling a claim as it shall deem necessary or appropriate, including but not limited to expenses for investigative, accounting, engineering and legal services;

C. [Greenwich] shall have the foregoing rights, irrespective of the fact that the [Indemnitors] may have assumed, or offered to assume, the defense of

10

>           [Greenwich] upon such claim and whether or not any Bond loss payment has
>           been made by [Greenwich]; . . . .

*Id*.

### B.  Proposed Conclusions of Law

JMG opposes Greenwich's requested fees and costs on several grounds.  It contends that the fees and expenses are excessive and unreasonable; that they reflect unnecessary and duplicative work and charges; and that the requests are unsupported.  JMG Excavating and Construction Co., Inc.'s Memorandum of Law in Opposition to Greenwich Insurance Company's Claim for Damages, etc. ("Opposition") (Docket No. 267) at 13-24.  It also contends that the $6,000 paid to Doten by Greenwich was not paid in good faith.  *Id*. at 24-25.  The problem for JMG with much of its arguments is that the language of the indemnity agreement allows Greenwich to recover any of its disbursements for expenses, attorney and professional fees and payments under the bond so long as the disbursements were made in good faith.  Unreasonable and unnecessary expenditures do not necessarily rise to the level of bad faith.

Under Maine law, indemnity provisions in a contract of indemnity "should be interpreted according to their plain, unambiguous language."  *Devine v. Roche Biomedical Labs., Inc.*, 637 A.2d 441, 446 (Me. 1994).  "An indemnification claim based on contract must rest on a clear, express, specific, and explicit contractual provision, under which the party against which a claim is to be asserted has agreed to assume the duty to indemnify."  *Id*.  In this case, the language quoted above from the Agreement is clear, express, specific and explicit.

JMG cites two cases in support of its argument that a standard of necessity and reasonableness should be applied to Greenwich's claim notwithstanding the explicit language of the Agreement.  Opposition at 14.  In *United Riggers & Erectors, Inc. v. Marathon Steel Co.*, 725 F.2d 87 (10th Cir. 1984), the court noted that the question in a case in which a bonding company sought reimbursement

from its indemnitor was "whether it was reasonable and necessary that *everything* done by [separate counsel for the bonding company] have been performed by the bonding company's separate counsel, as opposed to having been performed by the principal's counsel for both . . . ." *Id*. at 91 (citation omitted; emphasis in original). The language of the indemnity agreement provided indemnification for all expenses incurred by the surety, *inter alia*, "by reason of having executed any Bond issued hereunder." *Id*. at 89. In *Sentry Ins. Co. v. Davison Fuel & Dock Co.*, 396 N.E.2d 1071 (Ohio App. 1978), the court interpreted an indemnity agreement covering "any liability, and all loss, costs, charges, suits, damages, counsel fees and expenses . . . sustain[ed] or incur[red], for or by reason, or in consequence of (the surety) having become surety . . . ," *id*. at 1072, as being "limited to those counsel fees and expenses that have a rational and reasonable relation to the surety's actual and potential liabilities arising directly from the bonded transaction, reasonable in amount and incurred in good faith," *id.* at 1074. I do not find the reasoning of these two courts persuasive when compared to the more recent reasoning of courts that have dealt with language closer to that found in the Agreement at issue in this case.

In cases in which the indemnity agreement at issue included the statement that vouchers or other evidence of payment or compromise shall be *prima facie* evidence of the fact and amount of liability of the indemnitors, like that present in the Agreement here, courts have generally held that the burden of proof shifts to the indemnitor when the surety seeks reimbursement of fees and expenses and that "[h]ow the indemnitor may prove that the fees may not be recovered is dependent upon the language of the indemnity agreement." *Fallon Elec. Co. v. Cincinnati Ins. Co.*, 121 F.3d 125, 128 (3d Cir. 1997); *U.S. Fid. & Guar. Co. v. Feibus*, 15 F.Supp.2d 579, 582-84 (M.D. Pa. 1998); *Transamerica Premier Ins. Co. v. Nelson*, 878 P.2d 314, 318 (Nev. 1994). *See also United States Fid. & Guar. Co. v. Napier Elec. & Constr. Co.*, 571 S.W.2d 644, 646 (Ky. App. 1978). If the indemnity agreement holds

the surety only to a good faith standard, the indemnitor opposing a demand for reimbursement must prove fraud or lack of good faith. *Fallon*, 121 F.3d at 128-29; *Feibus*, 15 F.Supp.2d at 585. *See also J.D. Halstead Lumber Co. v. Hartford Accident & Indem. Co.*, 298 P. 925, 928 (Ariz. 1931).

The only challenges to Greenwich's claims raised by JMG that may reasonably be construed as questioning Greenwich's good faith in incurring the expenses concern Greenwich's demands that Fireman's Fund pay portions of the funds due from it to JMG pursuant to the settlement directly to Greenwich in satisfaction of its claims for indemnity and Greenwich's payment of $6,000 to Doten. Opposition at 21-23, 24-25. Under Maine law, an insurer acts in bad faith when it adjusts a loss with the goal of coming within the lower policy limits and the adjustment was "grossly substandard and not conducted in a fair and good faith manner." *County Forest Prods., Inc. v. Green Mountain Agency, Inc.*, 758 A.2d 59, 68 (Me. 2000). A substandard investigation of a claim can constitute bad faith. *Marquis v. Farm Family Mut. Ins. Co.*, 628 A.2d 644, 648 (Me. 1993). Demanding payment from Fireman's Fund of a portion of its settlement payment to JMG sufficient to cover a claim for damages known to Greenwich to be unresolved, particularly after Greenwich had been informed by the court that the terms of the settlement were not affected by its demand, is sufficiently similar to a refusal to defend an insurer when the duty to defend is clear from a comparison of the terms of the policy at issue and the complaint, *Maine Mut. Fire Ins. Co. v. Gervais*, 745 A.2d 360, 363 (Me. 1999), to constitute bad faith. The costs incurred by Greenwich in connection with this activity, some $6,942, Opposition at 22, should be deducted from its claim for purposes of the damages award. Greenwich cannot reasonably claim to have believed in good faith that it could satisfy its damages claim in this extra-judicial manner.

With respect to the payment to Doten, the question whether Greenwich acted in good faith is answered differently. JMG asserts that Fireman's Fund had paid Doten's claim in full, with interest,

13

before Greenwich made any payment to Doten and had taken the position that Doten thereafter had no claim against Greenwich.  *Id*. at 24.  If Doten nonetheless insisted on pursuing a claim against Greenwich at trial, JMG contends, Greenwich could have sought sanctions.  *Id*. at 25.  Greenwich could also have requested that counsel for JMG represent it at trial.  *Id*.  There is no evidence that Greenwich did so.  Greenwich's assertion that it paid Doten $6,000 to reduce any further exposure from Doten's claims and to eliminate the possibility that Greenwich would be compelled to participate in a trial,  since Doten had taken the position that it was still entitled to force Greenwich to participate in a trial and to seek recovery of alleged unpaid interest and to recover nominal damages against Greenwich, is unrebutted.  There was also the possibility of an appeal by Doten of the summary judgment Greenwich had obtained on Doten's claim under the Prompt Payment Act.  Under these circumstances, I cannot conclude that the payment to Doten was not made in good faith.

One other issue must be addressed.  JMG asserts, Opposition at 23, that Greenwich seeks $3,244.88 for reimbursement of fees paid to an accounting firm, Nihill & Riedley, P.C., Affidavit of Eric H. Loeffler (Plaintiff's Exhibit F) ¶ 19, while the bill submitted in support of that claim is only for $628.68, Plaintiff's Exhibit D.  Greenwich corrected this affidavit error during the hearing through the testimony of Mr. Loeffler and its  proposed findings of fact seek only the latter amount.  Greenwich Insurance Company's Proposed Findings of Fact, etc. ("Greenwich Findings") (Docket No. 270) ¶ 43.  Because the correct amount is included in Greenwich's proposed findings, no deduction from its total claim need be made as a result of this lack of evidence.

The remainder of JMG's challenges to portions of Greenwich's damages claim go to the necessity or reasonableness of those items, rather than raising any colorable claim of bad faith.  Such challenges may not be considered under the language of the Agreement.

14

### III. Conclusion

For the foregoing reasons, (i) Greenwich's motion *in limine* (Docket No. 262) is **DENIED**; and (ii) I recommend that Greenwich be awarded damages in the amount of $88,681.96 (the claim of $95,623.96, Greenwich Findings ¶ 43, minus the $6,942.00 attributable to its attempts to obtain a portion of the settlement funds due to JMG Excavating & Construction Co., Inc. from Fireman's Fund Insurance Co.). Greenwich may file a further request for reimbursement from the third-party defendants for the costs incurred in connection with this damages proceeding but not in connection with the motion *in limine*.

### *NOTICE*

*A party may file objections to those specified portions of a magistrate judge's report or proposed findings or recommended decisions entered pursuant to 28 U.S.C. § 636(b)(1)(B) for which de novo review by the district court is sought, together with a supporting memorandum, within ten (10) days after being served with a copy thereof. A responsive memorandum shall be filed within ten (10) days after the filing of the objection.*

*Failure to file a timely objection shall constitute a waiver of the right to de novo review by the district court and to appeal the district court's order.*

Dated this 4th day of November, 2005.

                /s/ David M. Cohen
                David M. Cohen
                United States Magistrate Judge